IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**SHERRYL LYNN FERNANDEZ,**

        **Plaintiff,**

v.                                                               No. 1:18-cv-00633-KRS

**ANDREW SAUL,**
**Commissioner of the**
**Social Security Administration,**

        **Defendant.**

## OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION TO REVERSE AND REMAND

Plaintiff seeks reversal of the Commissioner's determination that she is not entitled to Social Security disability benefits. With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73(b), the Court reverses and remands for further proceedings.

### I. PROCEDURAL BACKGROUND

In February 2014, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging that she had been disabled since November 20, 2012, due to diabetes; chronic back pain; bipolar depression; anxiety; migraines; and TMJ. (AR 211, 214). During a hearing held on April 5, 2017, before Administrative Law Judge ("ALJ") Doug Gabbard, Plaintiff testified that she was unable to work due, in large part, to back pain and depression. (AR 50). To support her claims, Plaintiff offered medical records, self-reports of alleged functional limitations, and corroborating opinion evidence submitted by her healthcare providers—Dr. Richard Moore, licensed independent social worker Kurt Johnson ("LISW

Johnson"), and licensed professional clinical counselor Robert Becher ("LPCC Becher")—and friend, Jennifer George.

As is relevant, Plaintiff's medical records document two failed back surgeries and continued attempts to alleviate her back and associated leg pain via prescription narcotics, muscle relaxants, nerve medication, and lumber epidural steroid injections ("LESIs"). Plaintiff has been using a prescribed cane to ambulate since 2012, and she reported that her pain causes functional limitations including, inter alia, the ability to lift only five pounds, stand for only ten minutes before needing to sit, walk for only thirty minutes, and sit for no more than forty-five minutes. (AR 19, 228). She further reported "that squatting and bending caused too much pain and kneeling was hard to get back up." (*Id.*).

In 2014 and 2017, Plaintiff's treating physician, Dr. Moore, completed assessments of Plaintiff's ability to do work related activities. In his most recent assessment, Dr. Moore opined that Plaintiff can never climb stairs or ramps, stoop, kneel, or crouch, and she can only balance occasionally. (AR 874). Dr. Moore further stated that Plaintiff can occasionally lift up to ten pounds and that she can only stand and walk for thirty minutes at a time. (AR 873). Similarly, Ms. George noted that Plaintiff is unable to bend, lift, squat, reach, or kneel, and that stairs cause her "tremendous amounts of pain." (AR 236).

Plaintiff's medical records also document a history of depression. In 2014, upon referral from Dr. Moore, Plaintiff began counseling sessions with LISW Johnson. (AR 545). LPCC Becher replaced LISW Johnson in 2017. (AR 53, 964). At the hearing, Plaintiff offered little testimony in regard to her depression. She did, however, state that her counseling with LPCC Becher has "been going well" but that it is difficult to "reopen old wounds and talk about things." (AR 53).

LPCC Becher and LISW Johnson completed assessments of Plaintiff's ability to do work-related, mental activities, with both finding that Plaintiff had marked limitations in her abilities to understand, remember, and carry out detailed instructions. (AR 598, 929). In terms of maintaining concentration, performing activities within a schedule, and completing a normal workday/workweek, LISW Johnson opined that Plaintiff was moderately limited in these areas, whereas LPCC Becher identified marked limitations. (*Id.*).

With this evidence in hand, ALJ Gabbard employed the required five-step disability analysis,[1] first finding that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of November 20, 2012.[2] (AR 15). At step two, he found that Plaintiff had the severe impairments of diabetes, back degenerative disc disease status post L4-5 laminectomy/discectomy, and affective disorder. (*Id.*). He also identified several non-severe impairments including migraines, GERD, hyperlipidemia, hypertension, allergic rhinitis, hypothyroidism, insomnia, fatigue, sleep apnea, and obesity. (AR 16). At step three, the ALJ determined that none of Plaintiff's impairments, whether alone or in combination, met or medically equaled the severity of a listed impairment. (AR 16).

ALJ Gabbard next assessed Plaintiff's Residual Functional Capacity ("RFC"),[3] finding that Plaintiff had the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with frequent climbing of ramps/stairs; occasional climbing of ladders/ropes/scaffolds; occasional balancing and stooping; frequent crawling but no kneeling and crouching; and she must be allowed to alternately sit/stand every 15-20 minutes throughout the workday for the purpose of changing positions but without leaving the workstation. In addition, she [is] limited to semi-skilled work (work which requires understanding, remembering and carrying out some detailed skills but

---

[1] *See* 20 C.F.R. § 404.1520 (outlining the five-step analysis).
[2] The ALJ also determined that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2017. (AR 15).
[3] The RFC gauges "what the claimant is still functionally capable of doing on a regular and continuing basis, despite his impairments." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). *See also* 20 C.F.R. § 404.1545(a)(1).

> does not require doing more complex work duties) interpersonal contact with supervisors and coworkers must be on a superficial work basis and she can attend and concentrate for extended periods but should have normal, regular work breaks.

(AR 18-19).

Here, ALJ Gabbard discussed Plaintiff's symptoms and concluded that although Plaintiff's impairments "could be expected to produce the above alleged symptoms…[her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 20). He also rejected the opinion evidence provided by Dr. Moore, LISW Johnson, and LPCC Becher, and the evidence provided by Ms. George.

ALJ Gabbard then proceeded to steps four and five where, with the help of a vocational expert ("VE"), he determined that Plaintiff was able to perform both her past relevant work as a cashier II, and representative occupations such as inspector packer and small product assembler. (AR 25-26). Accordingly, ALJ Gabbard concluded that Plaintiff was not disabled. (AR 26). The ALJ's decision became final when, on May 2, 2018, the Appeals Council denied Plaintiff's request for review. (AR 1). *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000) (explaining that if the Council denies a request for a review, the ALJ's opinion becomes the final decision).

## II. STANDARD

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). *See also* 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the

record or constitutes mere conclusion." *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (quotation omitted). The Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* at 1262. "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation omitted). Even so, it is not the function of the Court to review Plaintiff's claims de novo, and the Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

### III. ANALYSIS

#### A. Plaintiff's Arguments

Plaintiff's request for reversal and remand is based on contentions that ALJ Gabbard (1) improperly rejected the opinions of her treating physician, Dr. Moore.; (2) improperly rejected the opinions of her treating providers, LISW Johnson and LPCC Becher; (3) failed to account for her subjective allegations of pain and other symptoms; and (4) failed to ask the VE whether her testimony was consistent with the Directory of Occupational Titles.

Having meticulously combed the record, the Court finds that the ALJ improperly assessed Plaintiff's allegations of pain and associated limitations. Consequently, the Court cannot conclude that the ALJ's RFC determination is supported by substantial evidence and it will reverse on this ground. Because this error has implications for the ALJ's consideration of Dr. Moore's opinions and Plaintiff's ability to engage in substantial gainful activity, the Court will not reach Plaintiff's first or forth contentions as they "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

Further, the Court will only reach Plaintiff's specific contentions as to the ALJ's symptom evaluation to the extent they are applicable to the Court's findings. Finally, the Court does not assign error to the ALJ's treatment of the opinion evidence provided by LISW Johnson or LPCC Becher.

## B. The ALJ's Evaluation of Plaintiff's Pain Related Limitations

When assessing a claimant's RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). This assessment is based on all of the evidence of record, including descriptions offered by the claimant and other individuals regarding the limiting effects of the claimant's impairment(s) and symptoms. 20 C.F.R. § 404.1545(a)(3). While the "ALJ is not required to discuss every piece of evidence[,]" *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996), he "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010. *See also Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (explaining that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence").

Unfortunately, ALJ Gabbard failed to adhere to these mandates in his consideration of Plaintiff's alleged pain related limitations. This, in turn, tainted the remainder of the ALJ's findings.[4]

### 1. Physical Evidence

As discussed above, Plaintiff's back impairments are well documented throughout the record. Through hearing testimony and function reports, Plaintiff alleged that she suffers from

---

[4] It is worth mention that ALJ Gabbard's decision is littered with broad citations to the record, e.g., Exhibits 2F (comprising ninety-one pages), 11F (comprising 267 pages), etc. Thus, the Court was required to scour every page of the record to find the evidence upon which the ALJ relied. This expedition also revealed that the ALJ's findings both excluded and, in some instances, misstated probative evidence favorable to Plaintiff.

severe back and left leg pain which results in a variety of postural, ambulatory, and lifting limitations. (AR 19, 228). To support his determination that Plaintiff's statements were "not entirely consistent with the medical evidence and other evidence in the record," (AR 20), ALJ Gabbard explained that Plaintiff's "history of surgical intervention and medication usage suggests that she has obtained adequate relief of her symptoms without any medication side effects." (AR 22). He further noted that Plaintiff had normal movement of all major joints and normal motor strength of the muscle groups. (*Id.*). Yet, in making these findings, ALJ Gabbard engaged in impermissible "cherry-picking"; using only those "portions of evidence favorable to his position," *Hardman*, 362 F.3d at 681, while excluding significantly probative evidence without explanation. *See, e.g.*, *Clifton*, 79 F.3d at 1009-10.

To illustrate, ALJ Gabbard began his assessment of Plaintiff's alleged pain limitations by summarizing the various procedures and medications Plaintiff used to address her back pain from 2012 through February 2013. (AR 20). He then noted that as of February 2013, Plaintiff had mild decreased strength in the left anterior tibialis only; slight numbness in the L4 and 05 distributions of the left lower extremity; and that "[g]iven such findings and improved function, the orthopedic surgeon released her from care." (AR 20).

In actuality, Plaintiff's records reflect that on February 19, 2013, the orthopedic surgeon reported, "I think that I've done all I can do surgically to help alleviate this patient's discomfort. I think that she should have a discussion with the pain management physicians…for possible dorsal column stimulator. I will see this patient back PRN." (AR 288). Clearly, there is a stark contrast between ALJ Gabbard's description of improved functioning leading to a release from surgical care, and the surgeon's acknowledgement that he cannot provide Plaintiff with any further pain relief but that she should consider other avenues of pain management.

Later in his decision, ALJ Gabbard addressed Plaintiff's 2015 back surgery, noting that an MRI had confirmed a "small amount of scar over her recurrent L4-5 left sided disk and a 'hematoma.'" (AR 20). He then stated that "pain management records through February 2017 reflect that [Plaintiff] experienced a good response to ongoing conservative treatment" including a 2016 lumber epidural steroid injection, narcotic pain medication, Lyrica, and a TENS unit. (AR 21).

What the ALJ did not note is that after her surgery, Plaintiff had a one month follow up appointment with Mary Trujillo, NP. The report from that visit documents that the surgery did not provide any pain relief and that due to a "large amount of scar" that could not be surgically removed, Plaintiff "will continue to have the same leg pain that may only be relieved with injections." (AR 746). The ALJ also failed to discuss that Plaintiff has had mixed success with LESIs. The injection she received in 2016 provided "some benefit" which allowed her to feel "a bit better" (AR 789), but an earlier LESI "made her pain worse." (AR 750). And, in 2017, she declined injections because "they hurt more than the relief." (AR 993). Additionally, although ALJ Gabbard averred that Plaintiff did not have any medication side effects, (AR 22), the record reflects that one of Plaintiff's long prescribed medications, MS Contin (morphine), caused her to hallucinate. (AR 624, 786, 799).

The Court does not comment on whether the evidence the ALJ omitted and/or misstated will change the ALJ's decision on remand. Rather, without a full and accurate accounting of this evidence, the Court can neither conclude that the ALJ's RFC determination is supported by substantial evidence nor follow the ALJ's reasoning. *See, e.g.*, *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (explaining that factual findings must be supported by substantial evidence).

As a final illustration, ALJ Gabbard places great emphasis on the portions of Plaintiff's physical examinations that indicate normal motor strength and joint movement. The ALJ first cites to these examination findings to refute Plaintiff's alleged pain related symptoms, and later uses them to discount Dr. Moore's opinions. (AR 22, 24). However, the ALJ references this evidence without any link to Plaintiff's symptoms or explanation of their probative value. *See, e.g.*, *Praytor v. Commissioner, SSA*, 750 F. App'x 723, 727 (10th Cir. 2018) (unpublished) (explaining that the ALJ's reliance on normal examination findings was neither proper nor probative as this evidence "relate[d] largely to [the plaintiff's] functional abilities divorced from her pain"). In light of the ALJ's failure to explain how the normal examination findings undermine either Plaintiff's allegations or Dr. Moore's opinions, the Court cannot find that this evidence supports the ALJ's RFC determination. *Id.*

### 2. Daily Activities

ALJ Gabbard also discounted the severity of Plaintiff's symptoms by pointing out that Plaintiff engaged in activities such as a daily walking program, jewelry making, caring for her boyfriend who is an amputee, putting her boyfriend's wheelchair into a vehicle, and performing heavy lifting for her ill grandmother. (AR 20, 21). Although the ALJ presents these activities as absolutes, they require context, which the ALJ omitted, and application, which the ALJ failed to provide.

In regard to walking, the record contains multiple references to Plaintiff's inability to walk further than half a block. (AR 759, 753, 880, 941). Even the non-examining state agency consultants—to whom the ALJ afforded substantial weight—note that Plaintiff's statement that she "can walk less than a quarter of a mile" is both credible and consistent with the record. (AR 68, 69, 72, 83, 99, 102). Jewelry making, in turn, is mentioned briefly in records from 2013, *see,*

*e.g.*, AR 358, 362, 366, 370, and in Plaintiff's 2014 Adult Function Report. (AR 223). The only reference thereafter is a notation that Plaintiff "[u]sed to make jewelry." (AR 965). It is unclear how either of these activities serve to refute Plaintiff's allegations or provide support for the ALJ's findings. *See, e.g.*, *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (explaining that an ALJ "may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain").

With reference to the remaining activities, the ALJ broadly states that Plaintiff is "her boyfriend's caregiver," (AR 20), and that she "manag[es] her…boyfriend's care." (AR 22). While Plaintiff did report that she cares for her boyfriend, she explained that she does so by driving him to his medical appointments. (AR 224). There is no evidence either in the record or supplied by the ALJ to suggest that Plaintiff engages in full-time caregiving duties.

In terms of Plaintiff's lifting "activities," the only mention of Plaintiff's boyfriend's wheelchair is the comment that Plaintiff "does things *she should not be doing* such as putting a wheel chair in a vehicle." (AR 964) (emphasis added). And, it appears that the only notation of Plaintiff doing heavy lifting for her grandmother is dated September 5, 2013, and it is there to explain why Plaintiff's prescription for oxycodone was increased. (AR 362).

Again, the ALJ may have valid reasons for relying on this evidence but, in the absence of an explanatory narrative, it is not clear to the Court how the evidence supports his findings.

### C. LISW Johnson and LPCC Becher

Finally, in assessing the degree to which Plaintiff's affective disorder impacts her functionality, ALJ Gabbard discussed and weighed the psychological evidence of record. He then rejected the opinions of LISW Johnson and LPCC Becher on the grounds that the providers

are not acceptable medical sources[5] and that their opinions are not supported by the record. (AR 23). In regard to the latter, ALJ Gabbard cited to records which reference Plaintiff's non-compliance with assigned homework, contrary findings on mental status examinations, Plaintiff's satisfaction with her medication regime, and Plaintiff's self-reports of daily living. (*Id.*).

Plaintiff takes issue with ALJ Gabbard's reasoning, first arguing that the opinions cannot be rejected on the basis of their source alone. True, an ALJ must consider opinion evidence from non-acceptable medical sources using the factors set forth in 20 C.F.R. § 404.1527(c)(1)-(6). 20 C.F.R. § 404.1527(f). ALJ Gabbard clearly used these factors to determine that the opinions lacked consistency and supportability. *See* 20 C.F.R. § 404.1527(f)(1) (explaining that, when evaluating "other source" evidence, "not every factor…will apply in every case because the evaluation of an opinion from a medical source who is not an acceptable medical source…depends on the particular facts in each case.").

Plaintiff next attempts to rebut the ALJ's reasoning by offering her own view of the evidence. Plaintiff's arguments here merely highlight that the record contains evidence that both supports and contradicts the opinions in question. And, as the Commissioner aptly argues, (Doc. 21, p.10), ALJ Gabbard "was entitled to resolve such evidentiary conflicts and did so." *Allman*, 813 F.3d 1326, 1333 (10th Cir. 2016). Plaintiff's arguments are an invitation to reweigh the evidence. This the Court cannot and will not do. *Id.*

## IV. CONCLUSION

---

[5] At the time of the ALJ's decision, licensed physicians, such as Dr. Moore, qualified as "acceptable medical sources" whereas licensed social workers and counselors, including LISW Johnson and LPCC Becher, were considered "non-acceptable medical sources." See SSR 06-03p, 2006 WL2329939, at *2 (August 9, 2006).

The ALJ based his decision to discredit Plaintiff's alleged pain limitations on an incomplete and, in some instances, inaccurate accounting of the evidence. This error calls into question the entirety of the ALJ's RFC determination. It also robs the Court of its ability to "assess whether relevant evidence adequately supports the ALJ's conclusion…and whether he applied the correct legal standards to arrive at that conclusion." *Clifton*, 79 F.3d at 1009. Therefore, the Court will must reverse and remand the Commissioner's decision.

On remand, the Commissioner is directed to properly consider and explain the evidence he uses to either confirm or discredit Plaintiff's alleged pain limitations. And, because this reevaluation will have implications for the remaining evidence, the Commissioner is also directed to reconsider the opinions of Dr. Moore and Ms. George. The Court notes that, upon reevaluation, the Commissioner may reach the same conclusions found in ALJ Gabbard's decision. It is not the Commissioner's ultimate findings to which the Court objects. Rather, at this juncture, the Court is unable to determine whether these findings are legally sound.

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 19) is hereby **GRANTED IN PART**.

**IT IS FURTHER ORDERED** that this matter is **REMANDED** to the Commissioner for further proceedings consistent with this order.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE